All right, you're the one I meant to ask about voteness. Indeed, Your Honor. May it please the Court, Sean Morales-Doyle on behalf of the plaintiffs' appellants in this matter. This is a case about the state of Hawaii violating the 17th Amendment and depriving plaintiffs of the right to vote and foisting an unelected representative upon them for an entire Congress. And we think this is an incredibly important constitutional issue and it's one that the District Court should have addressed and it's one that we think this Court should address. You're wasting time. The District Court did not address it because of mootness. We think it's quite clear that the mootness, the exception to the mootness doctrine for cases which are capable of repetition yet evading review applies here. There isn't really much dispute both that there was an inherent limitation on the duration of this case such that it would always evade review no matter when it was filed. There also is not much question that it's reasonably likely to repeat the argument. It's a little odd when we talk about this doctrine because the Pentagon Papers case, which you're probably too young to remember, but I actually remember in real time, was decided from District Court to Supreme Court opinion in I think something like three weeks. It was a very short time. So the judicial system is in fact capable of deciding these cases very quickly when the need arises. On the other hand, I don't mean to make a speech here, I'm just saying this is the attention. We can't do every case that way. Of course. So this is a mid-level kind of case. This is not the Pentagon Papers case. This is not the Pentagon Papers. I am too young to remember it, but I do not think this approaches the Pentagon Papers. And you may even find the travel ban case decided within a year. And I think it's important to... But this is a mid-level case. This is more than a private dispute. This would be a dispute involving, you know, one hundredth of the membership of the U.S. Senate. And theoretically the case could have been decided and could be decided all the way through the Supreme Court within the time. I think for two reasons that's not the case, Your Honor. The first is history has not borne that out. The case... History has not what? Has not borne that out. There's one other case in recent memory in addressing the 17th Amendment. It's the Judge v. Quinn case. And that case, the case was filed immediately and it was litigated strenuously. There was a request for preliminary injunction. It went up to the federal court and the Seventh Circuit ultimately decided it. And the end result... It's just brought it to the wrong circuit. The end result was that there was a... The general election happened just as it normally would have. And then-Senator, President Obama's term was filled only for the remaining few weeks of the year by the person who was elected for the next term. So even when it's been done at its fastest, it doesn't actually remedy the problem. The second is it can never actually remedy the problem that comes up in this case because there is a burden placed on the plaintiffs, on the voters' right to vote, one of the most important rights in this country, if not the most, from the moment that the vacancy happens. And so no matter how quickly the courts might work to try to remedy that problem, there's going to be irreparable harm on a daily basis. And unlike a case... So just to finish that point, in other words, the harm you're complaining of is being represented in the United States Senate by somebody I didn't get to vote for, right? Correct. Or by nobody. So, well, so that every day that goes by, to the extent the seat is filled without the typical election process, then that's the harm, right? Correct. Okay. Then why did you wait two years to bring an action? A practical question, Your Honor, and the practical answer is that I would hazard a guess that most of the lawyers in this room may not know what the 17th Amendment says. Certainly my clients were not immediately aware of their right to bring this suit. My clients also then had to go find lawyers who would bring this suit. As I said, there's been one case in recent memory regarding the 17th Amendment. Before the Judge B. Quinn case, the only other case addressing the question under the 17th Amendment was Valenti v. Rockefeller in 1969. The only law firm available that had any experience in 17th Amendment litigation was our law firm in Chicago. It just, practically speaking, is not that easy to bring a case like this one. What if they'd filed immediately? What preliminary injunctive relief would they have been able to obtain that would have solved their problem? And that was the next point I was going to get to in response to Judge Cazenzi's question, Your Honor. Unlike a case like ProtectMarriage.com, and I apologize that I'm not intimately familiar with the facts of the Pentagon Papers case, but unlike cases where an action is to enjoin future conduct and the plaintiffs can seek a preliminary injunction in order to put off that action for a period of time, thereby preserving the case as an act of controversy, this is not that case. The plaintiffs could not have sought some remedy that would preserve this issue as a live controversy. It is inherently of limited duration. No matter how quickly they work and no matter how quickly the courts work, it is inherently of limited duration. And I think the reason for that is, unless I'm missing something, your theory is that the harm is ticking by day to day. Correct. Right. And it's also because what the plaintiffs – You're having the harm daily. Yes. And therefore, you don't do anything about it? No. That doesn't mean you don't do anything about it. It means there's nothing that could have been done that would have resolved this case in a timely manner. Because I'm understanding – you're not really getting at this, but I want to make sure that you have it. It seems to me there isn't an order that remedies your problem, right? Your problem isn't hurry up and have a – what would you seek? You know, a general election tomorrow? The – apparently what the defendants' appellees would have us seek would have been a preliminary injunction to deprive – to remove Senator Schatz from office because he was temporarily appointed. And leave the seat open? And then immediately have a general election. Well, Judge Christian, I think, is raising some questions about what's wrong with your whole case, which is not her intent, I understand. I'm just talking about mootness. I'm just talking about mootness. And I can't imagine a preliminary order you could have sought that would have cured the harm you're complaining of because either the – it seems one option would be don't fill the seat this way. We don't approve of this apparatus because we think it violates the 17th Amendment. But then that leaves the seat vacant in the United States Senate. That's no small thing. No. No, it's no small thing. But if it's unconstitutional and you're being represented by somebody who shouldn't be there, what's wrong with saying we are not being represented in the United States Senate by somebody under the Constitution and we don't want him there and remove him? Now, I'm not – I'm talking about whether you've got a political question, whether you've got a – even a facially legitimate argument, whatever. But if you're right about everything, why shouldn't there be an injunction? Why should you be forced to have someone represent you who is not allowed to do so under the Constitution? Well, it may be that that would be an appropriate remedy. I don't think it is the fact that the plaintiffs in this case, in order to maintain an active controversy, were required to seek the removal of a United States Senator. But also it wouldn't have maintained an active controversy to remove the United States Senator. If there were an immediate general election, that would have remedied the harm from the plaintiff's perspective. It would not have maintained an active controversy to allow this case to be fully litigated because the defendants' appellees presumably would have liked to appeal that question. And we would now have had an election. So then if they were right, would we overturn that election? The fact of the matter is that cases involving elections fall into this category for a reason. And it's because trying to fix these problems at the point when they are an active controversy poses some of the most difficult constitutional questions we can come up with and calls for remedies which aren't really remedies. So what we are proposing is that the plaintiffs don't understand why there are ways the cases do get decided immediately. If for some reason the Supreme Court decides it's interesting, it certainly can be done. And I'm not sure that there's a rule that requires you to let these violations sit unremedied and say, well, so we're being unconstitutionally represented. This is a terrible thing, a terrible violation of our constitutional rights. But we don't care about doing anything for the first two years because we don't think we can get the Supreme Court to consider it. I don't think there is a rule that requires us to wait. I do think there's a rule that allows for that possibility and still allows the case to be heard. No, I'm not sure there is a case that says you have to. Maybe there should be, but... I don't think there's a case. We had a two-year statute of limitations. We filed within that statute of limitations. The argument is essentially one that resembles laches to me, that we sat on our hands or something to that effect. There isn't a laches exception to the exception to mootness in this case. And laches requires prejudice to the defendants, and there was no prejudice to the defendants far from it. It was exactly the opposite of the prejudice that would have resulted if we would have sought and achieved the type of relief the defendants were proposing we would have sought. Let me, because time is short, and I do want you to get to the merits, let me talk a little bit about the rest of the mootness analysis. So let's say we are at the cable of a petition abating review. We accept that. You still have to establish that your client is likely to repeat for your client. Sure. And let me make sure I understand the construct here. The construct here is that your client or clients? Clients, two clients. Clients are voters of Hawaii. Correct. And that within their expected lifetimes there will be another similar vacancy in the Senate? Yes, Your Honor. We think that is absolutely reasonably likely. Just to give you a little bit of context, I know the defendants have objected to me relying on statistics, but I think that is a good way to predict the future. And I would say since the passage of the 17th Amendment, in the 100 years that followed, there were 813 senators who took office for the first time after that day. And there were 227 of them who took their office initially as a result of an appointment pursuant to the 17th Amendment. There were 244 vacancies, 200 of them non-technical vacancies. They didn't happen after the general election. So we're talking about almost a quarter of Senate seats. This is what happens. Senators stay senators, generally speaking. And even in the very, very short history of Hawaii, this has already happened twice. There have only been seven senators in Hawaii. So we don't look at the age and health of the existing senators? We might, and unfortunately— I'm just wondering, I mean, do we sort of—in making—conducting this analysis, do we sort of talk about the hypothetical senator, average senator, or do we actually say, well—and I have no idea about the age and health of the current Hawaii senators—or do we look at them and say, well, they're of robust health, fairly young? It's not going to happen within the lifetime of your clients. That's an interesting question, Your Honor. The age and health of the senators in Hawaii was not—that is not made part of a factual record in this case. This was a motion to dismiss. I hesitate to get into the question of the age and health of the Hawaii senators. I'm not asking you to get into it. I'm just wondering, is that a relevant part of the analysis, or— I personally would prefer to avoid that part of the analysis, but I do think that we are constantly reminded that senators are mortal and— I mean, it's not like Roe v. Wade, where gestation period is always more or less nine months, you know, give or take, right? Senators—a senator, in a way, was a senator going back to Watergate. Very long time, yes. Very well regarded and not regarded, and probably sometime before that. And Senator Akaka was also there for a very long time. Yes, there have only been seven senators in Hawaii since 1959. They've had a few that I see my time's running short. I would say we're dealing with an issue where something like 200 years of elected representation has been denied to the people of the United States since the passage of the 1913 amendment as a result of this kind of a problem. So why—is your position that, when it gets now from mootness to standing, which is another thing we have to—that anybody in the United States would have standing? No. Anybody in Hawaii would have standing when there was this vacancy. Well, we're all impacted by having bogus senators in the Senate, right? Well, not every state has the law that Hawaii had regarding— No, but the Senate acts with respect to the entire country. It confirms— It does. Judges. It passes legislation, or doesn't pass legislation. But the senators do represent a particular state, and so I would not propose to expand the right to bring this suit to every citizen of the United States, no. I think when it comes to standing, the courts have repeatedly held, both under the 17th amendment and under the analogous provision regarding Congress, that we have a continuing right as citizens to vote for the people who represent us in Congress, and that is not extinguished by a vacancy. How do we know whether your clients are going to move away from Hawaii? We do not know that for certain, Your Honor. Those facts are not part of the record in this case. There was no factual analysis as to the likelihood of this being repeated. There were no facts put into the record. There was no evidence about that. There was just a determination made. It's just not likely to repeat. So if the court believes that questions regarding the health and viability of the senators or the plaintiff's plans to stay in the state of Hawaii are relevant, we would be more than happy to submit facts on those matters, but that's just not the case that we have before us right now. I would like to, I only have a few seconds left, so I guess I won't be reserving any time. Yeah, we'll let you have two minutes. Thank you. You know, I did have one question. Counsel? Oh, I'm sorry. And you might think about it for rebuttal. Let's say we disagree with the district court about mootness. Do we then rule on the substantive 70th Amendment arguments, or do we then say, district court, you got it wrong on mootness, go back and litigate that before the district court? Of course, that's your prerogative, but it's plaintiff's appellant's request that this court address the 12b6 arguments as well for efficiency's sake. If we stated the claim, we'd like a ruling that we stated the claim. You're not in any great hurry, I assume. I'm sorry? You're not in any great hurry for a decision. You would have us read to mootness and standing? I would prefer to have a ruling as to whether we've stated a claim if the court can reach that issue based on our arguments. Thank you. Good morning, Your Honors. May it please the court, I'm Hawaii Solicitor General Clyde Wadsworth, and I'm appearing on behalf of Defendant Appellee's Governor David Ige and Chief Election Officer Scott Nago in their official capacities. I'll take 10 minutes of the 15-minute total for our side, and then counsel for the Democratic Party of Hawaii will take the remaining 5 minutes. Your Honors, this case is moot, and the capable of repetition yet evading review exception doesn't apply. The Kingdomware decision that plaintiffs recently cited doesn't change that. It doesn't address a case such as this, where the plaintiffs sat on the rights for nearly two years and impaired their own ability to obtain timely review. This case originally challenged the temporary appointment of Senator Brian Schatz to fill a Senate vacancy in late 2012, but plaintiffs waited until just five days before the November 4, 2014 election. But what if they had filed immediately? Pardon me? What if they had filed immediately? What preliminary relief would have been available to them to cure the harm they caused? If they filed immediately, Your Honor, they might have moved for a preliminary injunction for requiring the Governor to issue a writ of election to set a special date for the special election. That's what happened with the plaintiffs in Judge v. Quinn, the Seventh Circuit case. But then for some people, just to play that out, since they're complaining about a day-to-day harm, we don't want to be represented in the Senate by somebody we didn't vote for. That's their claim. So what you're saying is they could get it sooner, maybe. They wouldn't have to wait two years, perhaps. If they got that litigated, they could get a general election somewhat sooner and diminish the harm, or they can't eliminate it, right? Well, yes to the first part of your question. They could have sought an earlier election. They could have done two other things. I'll answer the second part of your question I just wanted to add. They also could have, when the vacancy became available, they could have sought a temporary injunction in joining the two aspects of the statute that they're complaining about, H.R.S. 17-1. They could have sought to enjoin the part of the statute that requires the Governor to make a temporary appointment, or they could have sought to enjoin the And either one of those, then, are you saying then they could have sought a preliminary injunctive relief requiring that the seat remain open? Is that their choice? No representation or representation? Well, I mean, they could have also, as I said before, they could have sought to require the Governor to issue a writ of election, to hold an election as soon as possible. But to answer your honest question. That reduces the amount of time. I mean, I'm not trying to interrupt, but I'm trying to get you to come full circle. Right. It reduces the amount of time. But the other point I would like to make to Your Honor's question is that the delay is baked into the 17th Amendment. I mean, the 17th Amendment anticipates a delay between the time of the vacancy and the special election. Plaintiffs here are talking about a continuing right to vote. This actually also relates to our standing argument, and the Court obviously can affirm on the alternative ground of standing. The plaintiffs here don't allege that their individual right to vote in the 2014 special election was infringed in any way. They have this more generalized concern about a continuing right to vote, which they say burdened, was burdened by a delay. In other words, they wanted to vote earlier. First, so two responses. First, their delay argument is fundamentally inconsistent with the relief they sought below. They weren't seeking to speed up the election. They waited until the eve of the election to file suit. They weren't seeking to speed it up. They were ---- I understand why you're pursuing this argument, but I don't understand why it matters. Either the case is capable of repetition, yet awaiting review. Everybody agrees that it is moot in the sense that the controversy is over. So either it is capable of repetition, yet awaiting review, or it's not. If it is, then I don't see what the timing, when they brought it, makes any difference. How does the timing bear on the factors that go into deciding whether it's capable of repetition, yet awaiting review? Well, our position, Your Honor, is that for purposes of mootness and the capable of repetition exception, it doesn't matter. That this Court ruled in ProtectMarriage.com that plaintiffs can't profit from the capable of repetition exception, where their own failure to seek prompt relief prevents judicial review. And the situation has to be part of a class of cases that will always evade judicial review. And the fact ---- Right. If you are a situation where if you bring it earlier in the period, you would have had plenty of time. You delay, and at this point it's too late. Then you say, you know, you can't manufacture capable of repetition, yet awaiting review. You manufacture, yet awaiting review. But if you had brought it on day one, the day after Senator Inouye died, it would still be capable of repetition, yet awaiting review. And two years later, it is still. I mean, it would have been so then and now. What difference does it make whether they brought it earlier or later? Well, our position is that this could have been litigated, Your Honor, that ---- To conclusion? It could have been litigated to conclusion. A couple of points. First of all, under Hawaii's ---- But I think they accept that challenge. I think they are not arguing that, oh, we only had five days left. We couldn't litigate it. They accept the challenge. And they say it could not have been litigated during the five days. So ---- I'm sorry, during the two years. So you are sort of ---- so why does it matter for you to argue that they brought it the wrong time? You know, they are treating the case ---- Because our ---- I'm sorry. They are treating the case as if it were filed the first day. So we're arguing in the alternative, basically. Our first argument is that it is basically a threshold requirement for them under protectmarriage.com to seek preliminary injunctive relief if it's available. And if they had filed earlier, it would have been available to litigate the suit to conclusion. But secondarily ---- to being litigated to conclusion. Yes. And they understand that. I think opposing counsel has accepted that challenge and they ---- has made arguments as to why it couldn't have been done within the time available, assuming it had been brought to begin with. I don't think he's disputing that. So I don't think you gain anything by pointing the finger and saying they brought it late. Why don't you address his argument as to why, I mean, he's argued, look, it couldn't have been done in the two years. Well, it could have been done in the two years. First of all, I wanted to point out that the length of time ---- Well, no, I mean, just saying it could have been doesn't help you any. I mean, I understand that's your position, but you have to sort of argue. Well, if they had filed suit earlier, they could have brought a ---- as the plaintiff stood and judged, which was litigated within two years, they could have brought a motion for a preliminary injunction to set a date for an election, and that could have been litigated. If that preliminary injunction had been granted or denied, it could have been litigated. In the Ninth Circuit, there are obviously ---- there's a procedure for litigating orders on preliminary injunctive relief on an expedited basis. That could have been litigated within a few months. It could have gone back then to the district court for a permanent injunction. A permanent injunction could have been entered. That could have been litigated on an expedited basis as well in the Ninth Circuit. That's what happened in the judge case. A permanent injunction was entered setting a date for a special election, and that was affirmed by the Seventh Circuit before the special election occurred. So there is an example in exactly this type of situation where the case was litigated within the election cycle before the election. Opposing counsel has given the court the docket to show that there were a few things that happened to that case in the district court after the election, but those were ministerial tasks that happened before judgment was entered. A permanent injunction was affirmed in the Seventh Circuit in the Judge v. Quinn case before the election, so that was completely litigated. The other point I wanted to make here was that in connection with the ---- Kennedy, what about Supreme Court review? I'm sorry? The standard is Supreme Court review as well. I understand that, Your Honor, and I don't believe in the Seventh ---- I don't know  about the Supreme Court, but as Your Honor has recognized earlier, you know, in a case of importance, Supreme Court review can happen as well. I mean, in the Hawaii v. Trump case, that case may be litigated within a year, including by the Supreme Court. This case is a constitutional ---- What is it about Hawaii? Pardon me? What is it about Hawaii? Well, this is a case of constitutional significance. It involves or would have involved a sitting senator. This is the type of case that this Court is certainly capable of litigating, excuse me, of deciding on. It seems to me, if this is one that, as Judge Kuczynski suggested, affects the rights of all of us, if we have some unconstitutional senator approving Justice Gorsuch's seat sitting, that's something that seriously affects all of us. I think, and if there is so many times this occasion arises, I would think this would be a case that the Supreme Court would very quickly either decide to grant cert on or decide to hear the case. I don't know how you determine whether a case can be litigated fully within the two years unless you try. I agree, Your Honor. I see that I'm out of time. No, you're not. Oh, yes, you can. Well, we'll give your fellow counsel a full five minutes. You can answer whatever you were answering, and then we'll give him five minutes. Thank you, Your Honor. We believe this case could easily have been litigated within the time allowed, and we believe that the delay that's being talked about here is baked into the 17th Amendment. Even if it were true, or even if plaintiffs, even if this statute were interpreted the way plaintiffs say it should have been, and the requirements that they say shouldn't have been there weren't there, there still would have been a delay caused by a temporary appointment. That's baked into the 17th Amendment, and that's a difference from the House situations that they've cited. For all of these reasons, we ask that the judgment below be affirmed. Good morning. May it please the Court. Brian Kang, appearing on behalf of the Democratic Party of Hawaii. The plaintiffs do not meet their burden under the capable of repetition but evading review exception, and I wanted to focus on the first prong of the exception, which is the capable of repetition prong. You know, the plaintiffs make the argument that statistically, and this is the only evidence in the record on this, that statistically vacancies occur in the United States Senate and have in the past, and then they make the argument that a vacancy will occur in the future. You know, past statistics do not always predict the future, clearly, and I think, Judge Kaczynski, you raise some issues with the problems with citing to those statistics to make the argument or to make the leap from the argument of the past vacancies to future vacancies with respect to this, because it's completely speculative in terms of if there's been vacancies in the past, why have there been vacancies? Will those types of issues repeat themselves in the future? What are the health of the senators? Are these particular plaintiffs going to be residents of Hawaii in the future? This is all completely speculative, and for that reason, it's very, very clear. But that's inherent in the capable of repetition yet evading review analysis. You have to speculate about the future. Well, I think, Your Honor, you know, it's a level below speculation, I think, under the Ninth Circuit precedence, you know, because, you know, in a lot of these election cases there is at least evidence in the record saying that, for example, this voter is going to again vote in the next election in this particular matter, or this organization in protectmarriage.com is going to object to having to disclose this information in the next election. Clearly, the state is going to take the same position. It's going to enforce it again in the future. But, again, in these election cases under the Ninth Circuit precedent, it's clear that there is at least some evidence in the record indicating that there is some distinct point in which the plaintiffs will say or will repeat the same action and perhaps suffer the same harm. So, you know, Judge Kuczynski, I believe, you know, the Ninth Circuit precedence is clear that you cannot just speculate. And, in fact, there's case law saying that speculation is insufficient to meet the standard under the precedent. You know, to touch briefly on the second prong of the exception, which is the abating review, I think what I heard the plaintiffs argue is that while there was no complete remedy that they could achieve within the time, there was at least a possibility that they could have, you know, mitigated the harm in the sense of trying to seek a special election or injunction to seek a special election. I don't think that the plaintiffs were arguing necessarily that the person appointed by the governor should have been removed at that point. But I think the plaintiffs were trying to seek at least some special election or a writ of election so that the election could occur quicker than what the plaintiffs had wanted. But the point about the evading review is that the plaintiffs didn't even try. There was no attempt to even try to seek that relief from the district court. Where their argument is that they didn't have to. Could you respond to their argument, please? I think they do, Your Honor, under the Ninth Circuit precedent. What precedent are you referring to, please? Well, Your Honor, I'm referring to cases such as, you know, the protectmarriage.com where I think that, you know, at least there was evidence in the record in which protectmarriage.com attempted to, or didn't actually, actually try to seek relief at that point. And I think that's what distinguishes those types of cases from this case. What distinguishes the case is that there was injunctive relief available there that could have kept the controversy alive. And I'm trying to see how is that possible here. Your Honor? We have a case law. We have a case called Johnson v. Rancho Santiago that has held that three years is too short to allow for judicial review. Three years. Three years, Your Honor. And again, I think, you know, I think as the court has recognized, there are some cases in which both the circuit courts and the Supreme Court recognize that the relief is important and the relief needs to be addressed immediately. And so even though it's three years, in some cases, as I think my counsel from Hawaii has pointed out, there are cases that are much longer. It could have been for expedited review. That's your relying on that because we're capable of scooting them along if we need to? That's correct. Okay. And I see my time is up. Thank you. So thank you very much. Very briefly as to that last point, I think that is quite clearly our point. What protectmarriage.com says is there has to be relief that we could have sought to maintain a live controversy, not relief that we could have sought that would have given us the relief we wanted, which, of course, wouldn't maintain a live controversy. What is the relief you're seeking? The relief we're seeking now is a declaratory judgment of the statute. It was always a declaration that this statute was unconstitutional. There was an initial additional claim for relief. If you declare the statute unconstitutional, what happens? The next time there's a vacancy, it's handled correctly. And this Court says how precedent. What is correctly? Sorry? How do you want this handled? If the Hawaii legislature decides to empower the governor to make a temporary appointment, it does not have to. If it decides to, it cannot put limitations on the governor's ability. It cannot force the governor to make a temporary appointment, and it cannot put limitations on the governor. It cannot allow the Democratic Party to play a role in deciding who the governor appoints. Moreover, the State has to move as quickly as practicable, taking the State's interests into account to have a special election. Verdict v. Takushi requires a weighing of the State's interests in maintaining. You want the State to move as quickly as possible to have a special election? Yes, Your Honors. Faster than 31 months, which is what the statute allows. Could we have sought that? Could we have sought that? Yes, and with your case, couldn't you have sought that? We could have sought that, and it would not have maintained a live controversy if we prevailed. It would have ended the live controversy. But controversy is the apparatus that Hawaii has employed that requires the governor to act as opposed to giving him discretion. Yes, and I think that's an excellent point. In ProtectMarriage.com, the Court did address the facial challenge to the statute as unconstitutional. It did not address the as-applied challenge, which it said was moot, because they said if you wanted to maintain the as-applied challenge, you could have had an injunction. It did say we are going to address whether this statute is constitutional or not, which courts regularly do in the First Amendment context, which is the case that that arose. But I don't understand. I'm sorry if I may apologize to Judge Christian. I don't understand why you didn't care about this unconstitutional system being imposed on all the citizens of Hawaii and the rest of the United States. I don't think it's accurate to say that I didn't care. I've done my best to explain that, Your Honor. I don't understand it, then. I just don't think it is the plaintiff's obligation to file any sooner than the statute of limitation requires, and I don't think that I have. Okay. I understand. All right. And whatever rule we may have had up to now, we are free to make any rule we think is appropriate on that subject. Of course, Your Honor. I mean, I just – practically, I must say, I just don't understand why you think we're being – have an unconstitutional senator foisted on us, and you're willing to sit for two years and let that happen. I think ideally this would have been a case that was addressed earlier, Your Honor, and I am not arguing otherwise, though I will say I do think that that would have posed far more difficult questions than the questions that are posed now in terms of the appropriate remedy. And I think that what the defendants are – What about following what happened in the Seventh Circuit? Were there – got a preliminary injunction? Yes. Why is that, of course, not satisfactory? Well, the Seventh Circuit case actually didn't end before the general election. It continued on more than two years, as we've noted in our briefs. And there was actually a petition for writ of certiorari to the Supreme Court, which was denied. I cannot remember standing here today what date that was denied upon, but I do believe that there's – that it happened after the election took place. So there wasn't actually a plenary review, and the case actually did continue on after the defendants would argue that it was moved. That would have been fine. If the case actually took more than the two years, that would be fine. Then it could continue on for more than the two years. But to let the two years go by, if you're really serious about this being such a constitutional violation – Now, I understand they had to find a permit in Chicago, but I don't think that's an excuse for normally somebody who is subject to some obligation other than the statute of limitations. Of course, Your Honor, the court, as you said, is free to create a new rule. The law as it stands right now does not place an obligation on the plaintiffs to bring their complaint as quickly as possible. The only legal doctrine I know of which suggests that is Latches. It does not apply here. And the protectmarriage.com precedent does not apply here. It quite simply is not the law that there was a requirement that we actually litigate the case for over two years in order for the exception to apply. And I don't think that the result in Judge B. Quinn was satisfactory. Could you have waited until after the election to bring this suit? It's an interesting hypothetical question. I think that it – in my view, yes, the challenge to an unconstitutional statute that is likely to impact the rights of voters in the future is something that the court should address. But I can understand distinguishing between a case where the actual facts have not been presented yet and one like this one where they have and say you have to at least wait for a vacancy to raise the challenge. It doesn't matter to me which position the court takes on that particular question. Thank you. The case is arguably submitted.
judges: Reinhardt, Kozinski, Christen